NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MICHELLE DANNA, | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 05-cv-5395 (DMC) |
| TRUEVANCE MANAGEMENT, INC., a Florida Corporation, and WADE HANCOCK, |  |
| Defendants. |  |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Defendants Truevance Management, Inc. ("Truevance") and Wade Hancock ("Hancock") for summary judgment pursuant to Rule 56(c). Pursuant to Rule 78 of the Federal Rules of Civil Procedure no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendants' motion for summary judgment is **denied**.

I.  **BACKGROUND**[1]

Defendant Truevance, a Florida corporation, provides infrastructure engineering, construction

---

[1] The facts set forth in this Opinion are taken from the undisputed facts set forth in the parties' Rule 56.1 statements. In opposing Defendants' motion for summary judgment, Plaintiff submitted a supplemental certification. Plaintiff claims that this additional certification was necessary because at her deposition Plaintiff was not asked to describe certain incidents in detail. See Certification of Michelle Danna ("Danna Cert.") ¶¶2, 3. To the extent any of the statements contained in the Danna Certification directly contradict Plaintiff's deposition testimony, they will be disregarded. See Hackman v. Valley Fair, 932 F.2d 239, 241 (3d Cir. 1991); Martin v. Merrell Dow Pharms., Inc., 851 F.2d 703, 706 (3d Cir. 1988).

and support services to its customers. Plaintiff Michelle Danna is a former employee of Defendant Truevance Management Inc. Plaintiff worked as a quality control engineer in Defendant Truevance's office in Rochelle Park, New Jersey from mid-April 2005 until July 5, 2005. Throughout her employment with Truevance, one of Plaintiff's supervisors was Defendant Hancock, now a former employee of Truevance. Defendant Hancock worked as an operations manager in Truevance's Rochelle Park office from December 2004 until April 2006.

Plaintiff initially applied to Truevance upon recommendation of her acquaintance, Steve Blankenship. After submitting her resume, Plaintiff was interviewed by Defendant Hancock. Shortly thereafter, Defendant Hancock offered Plaintiff a quality control manager position, which Plaintiff accepted. When Plaintiff began her employment with Truevance in mid-April 2005 she received a copy of the Truevance employee handbook which contains a written sexual harassment policy that required reporting of any harassment. In contradiction to the employee handbook, Plaintiff claims that Defendant Hancock told Plaintiff not to contact any other Truevance management with such complaints. Defendants dispute that Hancock ever made this statement to Plaintiff.

Forming the basis for this lawsuit are Plaintiff's allegations that Defendant Hancock routinely engaged in sexually harassing behavior throughout her employment with Truevance. Plaintiff claims that "[s]hortly after [she] began her employment with Truevance, she became the target of a constant and relentless campaign of sexual harassment by Defendant Hancock." Pl. Rule 56.1 Statement of Material Facts ¶15. Plaintiff's allegations of sexual harassment by Defendant Hancock include *inter alia*, overt sexual advances, inappropriate comments, sexual and inappropriate physical touching, and disparagement of Plaintiff's boyfriend. Defendants deny that any of this conduct occurred.

As set forth in Defendants' Rule 56.1 Statement of Undisputed Material Facts, and uncontested by Plaintiff[2], the employees at the Rochelle Park office were friendly with one another and regularly socialized with one another after hours.  Plaintiff, on occasion, would join her co-workers and supervisor, Defendant Hancock, to socialize after work at a nearby restaurant, Austin's. Additionally, Plaintiff had lunch with Defendant Hancock between five and ten times.  Plaintiff also had dinner with a group, including Defendant Hancock, approximately five times.  Defendants claim that during some of these social outings Plaintiff acted inappropriately towards Defendant Hancock, including *inter alia*, intentionally placing her foot between his legs and grabbing his "rear end."  See Defs. Rule 56.1 Statement of Material Facts ¶¶28-45.  In Plaintiff's Rule 56.1 statement of material facts, she does not deny that any of this conduct occurred.  However, in Plaintiff's certification, submitted in support of her brief in opposition to Defendants' motion for summary judgment, she "categorically den[ies] and dispute[s] all of the sexually-oriented conduct in which Defendant alleges I engaged."  See Danna Cert. ¶¶9-17.

On or about July 5, 2005 Plaintiff stopped working for Truevance.  Plaintiff claims that she was summarily terminated by Defendant Hancock.  Specifically, Plaintiff claims that she was terminated because she was improperly blamed for the Rochelle Park office's failure to meet the weekly quota.  See Pl. Rule 56.1 Statement of Material Facts ¶55.  Defendant disputes these allegations, claiming instead that Plaintiff resigned from Truevance.  See Defs. Rule 56.1 Statement of Material Facts ¶¶46-69.

---

[2]Local Civil Rule 56.1 requires that on motions for summary judgment each side must submit statements identifying material facts as to which there does or does not exist a genuine issue.  "[F]acts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted."  White v. Camden City Bd. of Educ., 251 F. Supp. 2d 1242, 1246 n.26 (D.N.J. 2003) (quoting Hill v. Algor, 85 F. Supp. 2d 391, 408 n. 1 (D.N.J. 2000)).

## II.  STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. Id. "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. Fed. R. Civ. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). However, "[i]n determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000) aff'd, 51 Fed. Appx. 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

## III.  DISCUSSION

### A.  NJLAD: Individual Liability of Defendant Hancock

Plaintiff seeks to hold Defendant Hancock individually liable for violating NJLAD under two

theories: *quid pro quo* sexual harassment and creation of a hostile work environment. NJLAD provides that it is unlawful discrimination for "any person, whether an employer or an employee or not, to aid, abet, incite, compel, coerce the doing of the acts forbidden under [NJLAD]." N.J.S.A. 10:5-12(e). As interpreted by the Third Circuit, the NJLAD does not provide for direct individual supervisory liability; rather, a supervisor may only be held liable for aiding or abetting an employer's unlawful employment action. See Davis v. City of Newark, No, 04-5317, 2006 WL 2583074, *5 (D.N.J. Sept. 6, 2006). On this ground, Defendants argue that Hancock, as a supervisor, may not be held individually liable because he cannot aid and abet his own allegedly harassing acts. See Defs. Br. at 11-12 (citing Newsome, 103 F. Supp. 2d at 823).

Contrary to Defendants' argument, in Hurley v. Atlantic City Police Department, the Third Circuit recognized "a somewhat awkward theory of liability" under which a supervisor may be found liable for his own harassing acts. 174 F.3d 95, 126 (3d Cir. 1999). The Hurley court found that "[a] supervisor, under New Jersey law, has a duty to act against harassment. This duty can be violated by deliberate indifference or affirmatively harassing acts. When a supervisor flouts this duty, he subjects himself and his employer to liability." Id. (citing Taylor v. Metzger, 152 N.J. 490, 503-4 (1998); Judson v. Peoples Bank & Trust Co., 25 N.J. 17 (1957)). The Third Circuit reaffirmed this theory of liability in Cardenas v. Massey, 269 F.3d 251, 267 (3d Cir. 2001). See also Hargrave v. County of Atl., 262 F. Supp. 2d 393, 434 (D.N.J. 2003).

Defendants also argue that Plaintiff has failed to adequately plead that her claims against Defendant Hancock are predicated on the N.J.S.A. 10:5-12(e) "aiding and abetting" theory of liability. See Kennedy v. Chubb Group of Ins. Cos., 60 F. Supp. 2d 384, 391 (D.N.J. 1999); Mogull

v. CB Commercial Real Estate Group, Inc., 162 N.J. 449, 475 (2000); Herman v. Coastal Corp., 348 N.J. Super. 1, 28 (App. Div. 2002) (all dismissing plaintiffs' NJLAD claims against individual supervisors for failure to adequately plead that relief is predicated on N.J.S.A. 10:5-12(e)). However, unlike the cases cited by Defendants, it is evident that Plaintiff seeks relief against Defendant Hancock based on his own harassing conduct and in violation of his duty, as supervisor, "to prevent and halt harassment." Hargrave, 262 F. Supp. 2d at 434. Unlike the plaintiff in Mogull, Plaintiff has not "lumped all of the individual defendants together with [the employer]." 162 N.J. at 475. Instead, Plaintiff has brought suit against her employer and the individual supervisor who, according to her allegations, actively harassed her and violated his own duties to prevent such harassment. Thus, it is the finding of this Court that Plaintiff's claims against Defendant Hancock should not be dismissed because she sufficiently plead the bases for her LAD claims against Hancock.

### B.     NJLAD: *Quid Pro Quo* Sexual Harassment

Pursuant to the NJLAD,

> Quid pro quo sexual harassment occurs when an employer attempts to make an employee's submission to sexual demands a condition of his or her employment. It involves an implicit or explicit threat that if the employee does not accede to the sexual demands, he or she will lose his or her job, receive unfavorable performance reviews, be passed over for promotions, or suffer other adverse employment consequences.

Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 601 (1993); see also Herman, 348 N.J. Super. at 18. Stated differently, the elements of *quid pro quo* harassment are: (1) sexual demands (2) linked to (3) an adverse employment action. Critical to the *quid pro quo* theory of liability is the causation or conditioning element: that a plaintiff's continued employment is conditioned on his or her

submission to an employer's implicit and/or explicit sexual demands.  See Morales-Evans v. Admin. Office of the Courts of N.J., 102 F. Supp.2d 577, 590 (D.N.J. 2000) (requiring a reasonable inference that there was a connection between purported harassment and change in employment).  In other words, there must be a causal link between the sexual demands imposed upon the employee and the termination of his or her employment.  In order to prevail on a *quid pro quo* theory, a plaintiff must articulate "a clear theory . . . to suggest that any employment benefits were explicitly or implicitly conditioned on her submission to unwanted sexual advances or requests for sexual favors." Id. at 590.

Here, several questions of fact exist regarding Defendant Hancock's conduct and whether or not implicit or explicit sexual demands were imposed upon Plaintiff.[3]  Even in light of these disputed facts, Defendants' motion for summary judgment may be granted if there is no evidence that the sexual demands were linked in any way to Plaintiff's employment.  In this case, the causal link between Hancock's alleged sexual demands and advances is the critical issue regarding Plaintiff's *quid pro quo* sexual harassment claim.

From a thorough review of the record and the parties' submissions, it is evident that Plaintiff has set forth minimal proof of a connection between the alleged sexual demands made by Defendant Hancock and Plaintiff's continued employment with Truevance.  At her deposition, Plaintiff explained what she perceived as the link between Hancock's sexual advances or demands and her

---

[3]For example, the parties dispute whether Hancock propositioned Plaintiff for sex, invited her to his apartment, touched, pressed and nudged himself against Plaintiff when walking by her in the workplace, used physical force on Plaintiff, or disparaged Plaintiff's boyfriend.  See Defs. Response to Pl. Rule 56.1 Statement of Material Facts ¶¶16, 18-20, 31.

continued employment:

> Q: "When I was accepting invitations to go out for drinks, he assured me that my job was secure." What did you mean by that?
> A: I meant that as long as I remained friendly with him outside of work, that my job was secure, that I would still be employed.

Certification of David Zatuchni ("Zatuchni Cert."), Ex. E (Danna Dep. at 114-115). Plaintiff attempted to bolster her *quid pro quo* claim by attesting to the fact that social interaction with Defendant Hancock impacted her treatment at work:

> Q: In the next paragraph you said, "I feel that I was treated unfairly for many reasons, including the fact that I quit playing the 'good ole boy' game with Wade."
> Do you see that?
> A: Yes
> Q: And you put in quote "good ole boy." What did you mean by that?
> A: I meant that I quit going to Austin's and having drinks and quit -- I stopped accepting lunch invitations and made our relationship strictly professional. There was no longer a friendly relationship because I was uncomfortable being his friend.

Zatuchni Cert., Ex. E (Danna Dep. at 112-113). At the conclusion of her deposition, Plaintiff further explained:

> You asked me about the advances. Not really advances, it added to the hostility that I felt that Wade had toward me when I started turning down his invitations to go to dinner and to lunch. [Describing an incident where Defendant Wade asked Plaintiff to fax something], [w]hen he came back into town, he asked me why I didn't fax to him the paper that he wanted, and I told him that it was because he didn't give me his fax number. And he yelled at me. He said, "F--k your fax number, use your resources." . . . that's when he started being really hostile toward me, it was after I stopped going out and having drinks and going to dinner and going to lunch, and that's what I meant by the "good ole boy" game. I quit being his friend and just kept it professional.

Zatuchni Cert., Ex. E (Danna Dep. at 152-153). This testimony, alone, would be insufficient to support a claim for *quid pro quo* harassment. However, in her supplemental certification, Plaintiff

-8-

elaborates on the implicit threats made to her job security. Specifically, Plaintiff clarified what she perceived as Hancock's proposed *quid pro quo* exchange for sexual favors in return for job security. In her Certification, Plaintiff stated that Hancock

> would say things such as "You do want [sic] I want you to do and you'll go far at Truevance." It was very obvious in the context of our conversations that Wade was talking about sexual favors and that he was trying to pressure me to have sex with him by linking it to having success at my job. Wade made these types of comments not about work related matters, but in the context of him inviting me to be with him outside of work.

Danna Certif. ¶4.

Defendants contend that Plaintiff's Certification must be disregarded because it contradicts Plaintiff's deposition testimony. See Hackman, 932 F.2d at 241 (holding that a Court may not consider a non-movant's statements in an affidavit that directly contradict deposition testimony). Contrary to Defendants' argument, Plaintiff's Certification does not contradict her deposition testimony. Rather, it supplements and supports the facts to which she testified during her deposition. Accordingly, it is the finding of this Court that Plaintiff's Certification may be considered on this motion for summary judgment.

The sum of Plaintiff's evidence and testimony supporting her *quid pro quo* claim is not strong. However, there exists a disputed question of material fact. Specifically, the parties dispute whether Defendant Hancock told Plaintiff that she would have success at her job if she complied with his sexual advances. This issue is ultimately a question of credibility: a reasonable juror could find Plaintiff's testimony to be credible and accordingly could find that Plaintiff's employment was linked to her supervisor's sexual demands. Such questions of credibility must be decided in favor of Plaintiff, the non-moving party. See Newsome, 103 F. Supp.2d at 816. If such a threat was made

by Defendant Hancock, then in the context of Hancock's other alleged behavior, a jury could find that Plaintiff was subject to *quid pro quo* harassment.  Therefore, summary judgment in favor of Defendants on Plaintiff's *quid pro quo* claim is improper.

### C. NJLAD: Hostile Work Environment

Plaintiff, as the complainant, bears the burden of establishing a *prima facie* case of sexual harassment.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); see also Reyes v. McDonald Pontiac GMC Truck, Inc., 997 F. Supp. 614, 617-18 (D.N.J. 1998) (discussing Title VII and LAD).  In order prevail on her hostile work environment claim pursuant to the NJLAD, Plaintiff must prove that

> the complained-of conduct: (1) would not have occurred *but for* the employee's gender; and it was (2) *severe or pervasive* enough to make a (3) *reasonable woman* believe that (4) the conditions of employment are altered and the *working environment is hostile or abusive*.

Lehmann, 132 N.J. at 603-4 (emphasis in original).  In determining whether the facts alleged constitute a hostile work environment, the New Jersey Supreme Court has held that each incident should not be considered in isolation. Id. at 607.  Rather, "courts must consider the cumulative effect of the various incidents, bearing in mind that each successive episode had its predecessors, that the impact of the separate incidents may accumulate, and that the work environment created may exceed the sum of the individual episodes." Id. (quoting Burns v. McGregor Elec. Indus., 955 F.2d 559, 564 (8th Cir. 1992); Robinson v. Jacksonville Shipyards, 760 F. Supp. 1486, 1524 (M.D. Fla. 1991)) (internal quotation marks omitted).

Whether a work environment is hostile or abusive is a fact-sensitive inquiry.  The Supreme Court has articulated the following factors that may be considered in determining whether a hostile

work environment existed: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

In this case, Defendants' primary argument is that Plaintiff has failed to allege conduct that is severe or pervasive. In addition to Plaintiff's evidence set forth in support of her *quid pro quo* claim, Plaintiff relies on the following evidence to show that Defendant Hancock's actions created a hostile and abusive work environment:

- In a work setting, Defendant Hancock picked up Plaintiff from behind when their picture was taken and then told her that he showed the photo to other male employees in the corporate office and that he described Plaintiff sexually. See Zatuchni Cert., Ex. A (Pl. Response to Defs. Interrogatory No. 2, subresponse K).

- Defendant Hancock put a napkin in Plaintiff's purse with a private, non-work related Yahoo e-mail address on it and the words "special email." See Zatuchni Cert. Ex. A (Pl. Response to Defs. Interrogatory No. 2 subresponse a); Zatuchni Cert. Ex. C (Aug. 18, 2005 email from Jason Blevins to Defendant Hancock, James True, Ruth Wyndham and Craig Scott).

- In Plaintiff's presence, Defendant Hancock and two other engineers discussed the "Paris Hilton sex video" and Defendant Hancock requested that an engineer forward it to him at the office. See Zatuchni Cert. Ex. A (Pl. Response to Defs. Interrogatory No. 2, subresponse z).

- Defendant Hancock explicitly propositioned Plaintiff for sex, and told her that he would be the "best she ever had." See Zatuchni Cert. Ex. E (Danna Dep. at 120-122).

- Defendant Hancock solicited Plaintiff to socialize with him outside of work. In one incident, he offered to get Plaintiff a hotel room and offered to stay there with her. Additionally, Defendant Hancock asked her to come to his apartment. See Pl. Statement of Facts ¶¶20-21; see also Zatuchni Cert. Ex. A (Pl. Response to Defs. Interrogatory No. 2, subresponses cc and dd).

- Defendant Hancock attempted to kiss Plaintiff when they were sharing his office.

> See Danna Cert. at ¶2; see also Zatuchni Cert. Ex. E (Danna Dep. at 122).

- Defendant Hancock made comments about her physical appearance, including that "her ass looked good." Zatuchni Cert. Ex. E (Danna Dep. at 115).

- Defendant Hancock repeatedly stood close to Plaintiff, closing the door in their office, and repeatedly tried to touch, nudge and hug Plaintiff. See Pl. Rule 56.1 Statement of Material Facts ¶31, 35; see also Zatuchni Cert. Ex. A (Pl. Response to Defs. Interrogatory No. 2, subresponses aa, t and u).

- Defendant Hancock grabbed and "manhandled" Plaintiff, and on one occasion grabbed her arm, leaving a bruise when she objected to harassing conduct as she tried to leave his office. See Pl. Rule 56.1 Statement of Material Facts ¶¶32-34.

- Defendant Hancock repeatedly used such comments as "Who's your daddy" and "You are going to mind," including passing notes to Plaintiff with these comments. Additionally, Defendant Hancock changed his name in Plaintiff's cell phone directory from "Wade Hancock" to "Daddy." See Pl. Rule 56.1 Statement of Material Facts ¶37-43.

- Defendant Hancock implicitly threatened Plaintiff with the "security" of her job, conditioning it on her submission to his advances. See Danna Certif. ¶4.

See Pl. Opp'n Br. at 18-19.

Several of these incidents raise a material question of fact as to whether or not Defendant Hancock's behavior created an actionable hostile work environment. A number of the incidents described by Plaintiff were physically threatening, including *inter alia*, when Hancock picked Plaintiff up, attempted to kiss her, "manhandl[ed]" her, and bruised her arm. Additionally, some of the incidents described by Plaintiff indicate that Hancock's actions interfered with her work, particularly, closing the office door or interrupting her while she was working. Finally, Plaintiff describes some severe and pervasive conduct by Hancock, including threats to Plaintiff's job security. It bears noting that all of these events occurred during Plaintiff's brief four month employment with Truevance. Thus, unlike Morales-Evans, these events did not occur over an

extended time period. 102 F. Supp.2d at 589.

As is the case with the *quid pro quo* claim, Defendants deny that each of these incidents occurred. Thus, the evidence supporting Plaintiff's hostile work environment claim raise several issues of credibility. As stated above, such questions of credibility must be decided in favor of Plaintiff, the non-moving party. See Newsome, 103 F. Supp.2d at 816. Therefore, summary judgment on Plaintiff's hostile work environment claim is improper.

### D.     Faragher-Ellerth Affirmative Defense

For the first time in their Reply Brief, Defendants contend that Plaintiff's hostile work environment claim must fail because Defendants are protected from liability pursuant to the Faragher-Ellerth affirmative defense.[4] "A moving party may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief." D'Alessandro v. Bugler Tobacco Co., No. 05-5051, 2007 WL 130798, *2 (D.N.J. Jan. 12, 2007) (citing Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 978 F.2d 1318, 1327 n.11 (3d Cir. 1992); Hoxworth v. Blinder, Robinson & Co., Inc., 903 F.2d 186, 204-05 n.29 (3d Cir. 1990); Ballas v. Tedesco, 41 F. Supp. 2d 531, 533 (D.N.J. 1999)). In this case, it would be unfair to grant summary judgment on this ground because Plaintiff has had no opportunity to respond to Defendants' Faragher-Ellerth argument. Accordingly, this Court will not consider Defendants' Faragher-Ellerth argument because it was not raised in their moving papers.

---

[4] An employer may establish an affirmative defense against liability by showing (1) the employer exercised reasonable care to prevent and promptly correct sexually harassing behavior; and (2) that the employee unreasonably failed to take advantage of the preventive or corrective measures provided by the employer. Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998).

**IV.     CONCLUSION**

For the reasons stated, it is the finding of this Court that Defendants' motion for summary judgment is **denied** as to Defendant Truevance and **granted** as to Defendant Hancock. An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:       July   25  , 2007
Orig.:      Clerk
cc:         Counsel of Record
            The Honorable Mark Falk, U.S.M.J.
            File

-14-